**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAMERON ORR,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:17-CV-01658** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CLAIR DOLL, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is pro se Plaintiff Kameron Orr's amended complaint filed pursuant to

42 U.S.C. § 1983 (Doc. No. 10), and supplement to his amended complaint (Doc. No. 11),

motions to appoint counsel (Doc. Nos. 2 and 12), and motion to proceed in forma pauperis (Doc.

No. 3). For the reasons set forth below, the Court will: (1) dismiss the amended complaint with

leave to amend; (2) deny without prejudice Plaintiff's motions to appoint counsel; and (3) grant

Plaintiff's motion to proceed in forma pauperis.

**I.      BACKGROUND**

On September 14, 2017, Plaintiff Kameron Orr, an inmate at the York County Prison in

York, Pennsylvania, filed a pro se civil action under 42 U.S.C. § 1983, naming as Defendants

York County Prison Warden Clair Doll, Deputy Warden Michael Buono, Captain Charles

Neeper, and "Cathy of Prime Care (medical)." (Doc. No. 1.) The sparse allegations within the

complaint stem from alleged incidents that the Court presumes occurred at the York County

Prison. (Id.)

Plaintiff alleged that he endured "excessive mistreatment and neglect" from prison staff

on March 23, 2017. (Id. at 2.) Specifically, Plaintiff alleged that he was in pain and was unable

to eat and that the prison's medical staff refused to see him. (Id. at 2-3.) Plaintiff also alleged

that he told other prison staff members about his situation, including Defendant Neeper, but they

1

refused to help.  (Id. at 3.)  After suffering from pain for almost an entire week, Plaintiff alleged

that he saw Defendant Cathy, but she refused to help him and told him that he needed to

purchase toothpaste.  (Id.)  Plaintiff alleged that he had no funds so he was unable to purchase

toothpaste.  (Id.)  Plaintiff requested that this Court order the York County Prison to (1) "clean

up their policy and staffing" and (2) award him damages for his pain and suffering.  (Id.)

        Prior to the Court's screening of the complaint, Plaintiff filed an amended complaint and

supplement on November 6, 2017.  (Doc. Nos. 10, 11.)  Plaintiff does not provide a section

naming any defendants in his amended complaint.  In the amended complaint, Plaintiff avers that

beginning on March 23, 2017, he began to suffer from "a severity of sensitivity . . . in [his] gums

and teeth."  (Doc. No. 10 at 1.)  Plaintiff alleges that this sensitivity left him with a constant

migraine and he was unable to chew or consume food without extreme pain.  (Id.)  Plaintiff

alleges that while he submitted numerous medical sick call slips and pleaded with numerous

correctional officers and Captain Neeper, he remained unseen.  (Id. at 2.)  Plaintiff also alleges

that he then resorted to filing grievances.  (Id.)

        On March 29, 2017, Plaintiff alleges that a dentist assistant, Catriona, saw him in regards

to his gum and tooth pain.  (Id.)  Plaintiff alleges that she refused to help him and only told him

that he needed to purchase a soft bristle tooth brush and use toothpaste, which would help.  (Id.)

However, Plaintiff alleges that he is indigent and unable to afford a toothbrush and toothpaste.

(Id. at 3.)  Plaintiff claims that his grievances and letters for help have gone unanswered and that

Defendants have been deliberately indifferent to his serious medical need.  (Id. at 3-4.)

        Plaintiff also attaches exhibits to his complaint which consist of his grievances as well as

a response to his grievances.  (Doc. No. 11.)  Specifically, the response to Plaintiff's grievance

from Deputy Warden Buono provides that in response to Plaintiff's March 26, 2017 grievance,

Plaintiff was seen by a dentist on March 29, 2017, who had X-Rays taken and recommended that Plaintiff use Sensodyne toothpaste and a soft brush.  (Doc. No. 11 at 1.)  Moreover, the exhibit further provides that "[p]rison records also show that [Plaintiff] received a deposit of $60.00 on April 3, 2017," but rather than purchasing toothpaste and a toothbrush as recommended, Plaintiff "elected to purchase numerous junk food/snack items."  (Id.)

## II.     LEGAL STANDARD

### A.     Screening and Dismissing Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the court must dismiss the complaint.  28 U.S.C. § 1915A(b)(1).  District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a

claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct:  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion:  (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp.,

629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the context of pro se prisoner litigation specifically, a district court must be mindful that a document filed pro se is "to be liberally construed."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106) (internal quotation marks omitted).

### B.      Section 1983 Standard

In this case, Plaintiff has brought claims under 42 U.S.C. § 1983.  (Doc. No. 1 at 1.)  In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., No. 3:CV-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

Moreover, in order for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009).  Therefore, supervisors cannot be liable under § 1983 on the traditional standards of respondeat superior.  Santiago, 629 F.3d at 128.  Instead, there are two theories of supervisory liability that are applicable to § 1983 claims:  (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under §

1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" <u>A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004).

### C.    Eighth Amendment Violations

As explained above, in order to plausibly plead a § 1983 claim, Plaintiff must allege that the conduct complained of deprived him of a constitutional right.  Although Plaintiff does not specify which constitutional right was allegedly violated by Defendants, Plaintiff avers that he endured excessive mistreatment and neglect while imprisoned.  (Doc. No. 1 at 2.)  Liberally interpreting Plaintiff's <u>pro</u> <u>se</u> pleadings, the Court construes the complaint as alleging an Eighth Amendment violation.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004); <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).  The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) plaintiff's objectively serious medical needs.  <u>Farmer v.  Brennan</u>, 511 U.S. 825, 834, 837 (1994); <u>Chavarriaga v. N.J. Dep't of Corr.</u>, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  <u>Farmer,</u>

511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."). If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician. Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference. Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). The question is thus "whether the defendant has provided the plaintiff with some type of treatment, despite

whether it is what plaintiff wants." Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty., 834 F.2d at 347. Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. See id. For example, courts have indicated that minor abrasions, even those involving bleeding, do not rise to the level of objectively serious medical needs. See Wisneski v. Denning, Civ. No. 12-864, 2014 WL 1758118, at *22 (W.D. Pa. Apr. 30, 2014).

## III.    DISCUSSION

### A.  Plaintiff's Amended Complaint Must Be Dismissed With Leave to Amend

Plaintiff's amended complaint does not meet the above-described pleading standards and therefore must be dismissed. The most notable deficiency of the amended complaint is that Plaintiff has failed to provide the names of any Defendants, other than Clair Doll and the York County Prison in the caption of his amended complaint.[1]  (Doc. No. 10.)  Rule 10(a) of the Federal Rules of Civil Procedure provides that the "title of the complaint must name all the parties." Here, the caption of Plaintiff's amended complaint reads: "Kameron Orr v. Clair Doll (York County Prison)." (Doc. No. 10.)  Moreover, Plaintiff cannot rely on his original complaint

---

[1] The Court notes that the York County Prison is not an entity subject to suit under 42 U.S.C. § 1983.  Smith v. Samuels, Civ. No. 12-524, 2013 WL 5176742, at *4 (M.D. Pa. Sept. 12, 2013) ("Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability.").  Therefore, the York County Prison will be dismissed from this action with prejudice.

to supplement the amended complaint because the filing of the amended complaint supercedes the original complaint. See Knight v. Wapinsky, Civ. No. 12-2023, 2013 WL 786339, at *3 (M.D. Pa. Mar. 1, 2013). The Court finds that Plaintiff has failed to comply with Rule 10(a), in that he has failed to set forth the names of all the defendants in the current suit.

While the caption of the amended complaint only names Clair Doll as a Defendant, the body of the amended complaint mentions four individuals by name: Captain Charles Neeper, dentist assistant Catriona, Cathy, and Deputy Warden Michael Buonos. (Doc. No. 10 at 2, 3.) However, as discussed above, Plaintiff's amended complaint violates Rule 10(a) by failing to name these individuals in its caption. [2]

Moreover, Plaintiff fails to provide any specific factual allegations to support his legal claim of an Eighth Amendment violation against any purported Defendant. For example, with regard to Captain Neeper, Plaintiff simply alleges that Plaintiff "pleaded with numerous correctional officers and captains[,] including Capt. Charles Neeper . . . to get [Plaintiff] care, [but] days later, [Plaintiff] still remained unseen." (Id. at 2.) With regard to Cathy, Plaintiff provides, without any background context, that "Cathy was also aware of my status prior to her remarks . . . [but] she refused [to help me]." (Id. at 3.) Plaintiff does not elaborate the identity of Cathy or what "remarks" she allegedly made. Without at least a modicum of factual specificity explaining the mistreatment that Plaintiff experienced and identifying the particular conduct of

---

[2] Moreover, to the extent that Plaintiff intends to name Warden Doll and Deputy Warden Buono as Defendants, in order to be liable under § 1983, a supervisor must have "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations" or "such defendants, 'with deliberate indifference to the consequences, [must have] established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K., 372 F.3d at 586. Plaintiff must plausibly allege supervisory liability or personal involvement in the constitutional violations as to each Defendant in order for his amended complaint to state a claim on which relief can be granted.

9

each Defendant that harmed Plaintiff, the Court must dismiss the amended complaint for failure to state a claim.

However, a greater hurdle for Plaintiff to overcome is the response to Plaintiff's grievances by Deputy Warden Buono, attached as a supplemental exhibit to Plaintiff's amended complaint. (Doc. No. 11.) Plaintiff has averred in his amended complaint that he never received any responses to his grievances and that he is unable to afford toothpaste and a toothbrush because he is indigent. (Doc. 10 at 2, 3.) However, Plaintiff's own exhibits docketed in support of his amended complaint (Doc. No. 11), refute these allegations. "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." Roth v. Garcia Marquez, 942 F.2d 617, 625 n. 1 (9th Cir. 1991) (quoting Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987)). "[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true." Roth, 942 F.2d at 625 n.1 (citation omitted).

Here, Plaintiff's own exhibit calls into question the allegations set forth in his amended complaint; namely, that he received no care or help with regard to his gum and teeth pain and that he was unable to afford toothpaste and a toothbrush. Indeed, the grievance response (Doc. No. 11 at 1), provides that Plaintiff was seen by a dentist on March 29, 2017, that the dentist took X-Rays, and that he recommended Plaintiff use Sensodyne toothpaste and a soft brush. (Id.) Moreover, in regard to Plaintiff's allegation that he could not afford toothpaste or a toothbrush, this very exhibit again belies his averment by providing that $60.00 was deposited into his account on April 3, 2017. (Id.) Rather than purchasing the oral care products that were

recommended to him by the dentist, Plaintiff instead chose to purchase "junk food/snack items." (Id.)

Notwithstanding the aforementioned, the Court notes that dental needs fall into the category of "serious medical needs" because dental care "is one of the most important needs of inmates." McCarthy v. Place, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980)). Courts have recognized the ability of prisoners to state a cognizable Eighth Amendment claim where they were denied oral hygiene supplies, specifically toothpaste. Board v. Farnham, 394 F.3d 469, 481 (7th Cir. 2005). In Board, the court found that certain prison officials were not entitled to qualified immunity when they denied prisoners toothpaste for a three-and-a-half week period. Id. at 481-82. Additionally, prisoners alleged that they had requested toothpaste approximately 15 times during the three-and-a-half week period. Id. at 481.

However, where a plaintiff fails to allege a deprivation of hygiene items resulting from deliberate indifference, courts have found that their claims do not rise to the level of an Eighth Amendment violation. See Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003) (holding that a prisoner had failed to state an Eighth Amendment claim because he did not allege a complete denial of hygiene products or that the deprivation occurred out of indifference to his hygiene needs); Brown v. Brown, 46 F. App'x. 324, 325-26 (6th Cir. 2002) (holding that a prisoner who was merely inconvenienced because he was unable to purchase personal hygiene supplies for several months due to a hold on his account failed to state an Eighth Amendment claim).

Here, Plaintiff's amended complaint, as currently drafted, fails to state a claim upon which relief can be granted. Plaintiff alleges that he began experiencing oral pain around March

23, 2017.  (Doc. No. 10 at 1.)  Six days later, Plaintiff was seen by a dentist (or dental assistant) who ordered X-Rays and advised plaintiff to purchase toothpaste and a toothbrush to help his oral pain.  (Id. at 2.)  Plaintiff had the ability to purchase toothpaste and a toothbrush, but instead, purchased "junk food/snacks."  (Doc. No. 11 at 1.)  See Ruiz v. LeBlanc, 643 F. App'x 358, 361-62 (5th Cir. 2016) (no violation when inmate was initially provided, and could have purchased, additional toothpaste).  Accordingly, as currently alleged, there are no assertions, or evidence of consistent, ongoing denial of dental care by any defendant that would have raised the concerns set forth by the court in Board, where the court found that denying a detainee toothpaste for three-and-a-half weeks violated plaintiff's "established constitutional right to toothpaste under the circumstances."  394 F.3d at 481.  As Plaintiff's amended complaint currently stands, the Court cannot discern whether or not Plaintiff was previously in possession of, or provided with, a toothbrush and toothpaste.  At most, this Court can only surmise that Plaintiff was without toothpaste for a week.

Because it is not clear that allowing Plaintiff to amend his complaint would be futile or inequitable, Plaintiff will be permitted to file an amended complaint.[3]  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

### B.  Plaintiff's Motion to Appoint Counsel Must Be Denied

Along with his complaint, Plaintiff requests the appointment of counsel.  (Doc. Nos. 2, 12.)  Although prisoners have no constitutional or statutory right to the appointment of counsel in

---

[3] Should Plaintiff choose to file an amended complaint, he is advised that the amended complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the original or amended complaint or to any other documents already filed.  The amended complaint should set forth his claims in short, concise, and plain statements.  Each paragraph must be numbered.  The complaint must specify which actions are alleged as to which Defendants and must sufficiently allege personal involvement of the Defendant in the acts which he claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.

civil cases, district courts do have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). In Tabron v. Grace, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include the plaintiff's ability to present his case, the complexity of the legal and discovery issues in the case, the amount of factual investigation that will be required, the necessity of expert witnesses, and whether "witness credibility is a key issue." Id. However, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." Montgomery, 294 F.3d at 498-99 (citing Tabron, 6 F.3d at 155).

Here, Plaintiff's case has no arguable merit in fact and law, as Plaintiff's complaint fails to allege sufficient facts to make his § 1983 claim plausible. In addition, the Court notes that none of the other Tabron factors warrant appointing counsel at this time. Specifically, Plaintiff has the apparent ability to litigate this action pro se, as he has thus far managed to file a legible complaint and amended complaint, two motions to appoint counsel, and motion for leave to proceed in forma pauperis. Moreover, Plaintiff does not suggest in his complaint or motion to appoint counsel "that he presently suffers from any impediment unusual to other pro se litigants that appear before this Court." Segura v. Wetzel, Civ. No. 17-0931, 2017 WL 3495184, at *2 (M.D. Pa. Aug. 14, 2017). Instead, Plaintiff simply claims that he cannot obtain counsel because he is incarcerated and lacks funding. (Doc. No. 2 at 1; Doc. No. 12 at 1.) Therefore, at this time, this Court declines to appoint counsel for Plaintiff. However, in the event that future proceedings demonstrate the need for counsel, the matter may be reconsidered by the Court sua sponte or upon a motion properly filed by Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's amended complaint (Doc. No. 10), will be dismissed without prejudice for its failure to state a claim upon which relief may be granted; Plaintiff's motions to appoint counsel (Doc. Nos. 2 and 12), will be denied without prejudice; and Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 3), will be granted. Plaintiff will be granted thirty (30) days leave to file a second amended complaint in accordance with this Memorandum.  An appropriate Order follows.