IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAMERON ORR,<br>    Plaintiff | :<br>:<br>:    No. 1:17-cv-01658 |
| v. | :<br>:    (Judge Kane) |
| CLAIR DOLL, et al.,<br>    Defendants | :<br>: |

**MEMORANDUM**

Before the Court is pro se Plaintiff Kameron Orr ("Plaintiff")'s second amended complaint filed pursuant to 42 U.S.C. § 1983. (Doc. No. 18.) For the reasons set forth below, the Court will dismiss the second amended complaint without further leave to amend and direct the Clerk to close the above-captioned action.

**I.    BACKGROUND**

On September 14, 2017, Plaintiff, a former inmate at the York County Prison in York, Pennsylvania, filed the instant pro se civil action under 42 U.S.C. § 1983, naming as Defendants York County Prison, Warden Clair Doll, Deputy Warden Michael Buono, Captain Charles Neeper, and "Cathy of Prime Care (medical)." (Doc. No. 1.) The allegations in the complaint stemmed from alleged incidents that the Court presumes occurred at the York County Prison. (Id.)

Plaintiff alleged that he endured "excessive mistreatment and neglect" from prison staff on March 23, 2017. (Id. at 2.) Specifically, Plaintiff alleged that he was in pain and unable to eat, and that the prison's medical staff refused to see him. (Id. at 2-3.) Plaintiff also alleged that he told other prison staff members, including Defendant Neeper about his situation but they refused to help. (Id. at 3.) After suffering from pain for almost an entire week, Plaintiff claimed that he was seen by Defendant Cathy, but she refused to help him and told him that he needed to

1

purchase toothpaste.  (Id.)  Plaintiff further alleged that he had no funds so he was unable to purchase toothpaste.  (Id.)

Prior to the Court's screening of the complaint, Plaintiff filed an amended complaint and supplement on November 6, 2017.  (Doc. Nos. 10, 11.)  In the amended complaint, Plaintiff averred that beginning on March 23, 2017, he began to suffer from "a severity of sensitivity . . . in [his] gums and teeth."  (Doc. No. 10 at 1.)  Plaintiff alleged that this sensitivity left him with a constant migraine and as a result, he was unable to chew or consume food without extreme pain.  (Id.)  Plaintiff maintained that while he submitted numerous medical sick call slips and pleaded with numerous correctional officers for medical assistance, he remained unseen by prison medical staff.  (Id. at 2.)

On March 29, 2017, Plaintiff stated that a dental assistant, Catriona, saw him in regard to his gum and tooth pain.  (Id.)  Plaintiff alleged that Catriona refused to help him and informed him only that he needed to purchase a soft bristle toothbrush and use toothpaste, which would alleviate his symptoms.  (Id.)  Plaintiff stated that he, however, is indigent and unable to afford a toothbrush and toothpaste.  (Id. at 3.)  Plaintiff claimed that his grievances and letters for help went unanswered and that Defendants were deliberately indifferent to his serious medical need.  (Id. at 3-4.)

Plaintiff attached exhibits to his amended complaint, which consisted of his grievances and a response to his grievances.  (Doc. No. 11.)  Specifically, the response to Plaintiff's grievance from Deputy Warden Buono provided that in response to Plaintiff's March 26, 2017 grievance, Plaintiff was seen by a dentist on March 29, 2017, who ordered X-Rays and recommended that Plaintiff use Sensodyne toothpaste and a soft brush.  (Id. at 1.)  Moreover, the exhibit provided that "[p]rison records also show that [Plaintiff] received a deposit of $60.00 on

April 3, 2017," but rather than purchasing toothpaste and a toothbrush as recommended, Plaintiff "elected to purchase numerous junk food/snack items." (Id.)

On March 15, 2018, the Court dismissed the amended complaint but granted Plaintiff leave to file a second amended complaint. (Doc. Nos. 14, 15.) In his second amended complaint, Plaintiff asserts the same allegations as set forth in his amended complaint, but also includes a number of additional Defendants.[1] Plaintiff claims that Defendants were deliberately indifferent to his serious medical need, i.e., oral care. (Doc. No. 18.) Plaintiff alleges that while he was in the Behavioral Adjustment Unit ("BAU"), he began to suffer "from a variety of pains" that originated "from his gums [and] teeth." (Id. ¶ 4.) Plaintiff maintains that he submitted sick calls to the medical staff, but that they "knowingly and willingly left [him] in pain and refused to help him." (Id. ¶¶ 6, 7.) On March 29, 2017, Plaintiff states that a dental assistant, Catriona, checked on him but refused to assist him, instead telling him only to purchase a soft bristle toothbrush and Sensodyne toothpaste, which she claimed would help, and taking an x-ray of his mouth. (Id. ¶¶ 8, 9, 13, 14.) Plaintiff maintains that the "hard" bristle finger toothbrush and maximum security gel toothpaste[2] that he was using while in BAU caused his oral pain. (Id. ¶ 15.)

Plaintiff also complains that the maximum security gel toothpaste that he had to use while on the six-day BAU restriction contains insufficient whitening ingredients that caused him to experience a "yellowing" of his teeth. (Id. ¶ 28.) Plaintiff reiterates that his claim concerns what he "endured while housed in BAU restriction . . . from March 23, 2017 [to] March 29, 2017." (Id. ¶ 36.) Specifically, Plaintiff maintains that because he was able to use only the hard bristle

---

[1] Despite the Court's previous dismissal of York County Prison with prejudice (Doc. Nos. 14, 15), the second amended complaint names York County Prison as a defendant.
[2] Ostensibly the only type of toothpaste permitted to be used by inmates while in the BAU.

3

finger toothbrush and maximum security gel, as opposed to a soft bristle toothbrush and "real" toothpaste from March 23, 2017 to March 29, 2017, he suffered "unnecessary unwanton infliction of pain." (Id. ¶¶ 47, 55, 65, 67, 68, 79.) Further, Plaintiff claims that because Defendants did not provide him with a soft bristle toothbrush and "real" toothpaste, Defendants were deliberately indifferent to his serious medical need. (Id.)

## II. LEGAL STANDARD

### A. Screening and Dismissing Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a

4

claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp.,

629 F.3d 121, 130 (3d Cir. 2010). In addition, in the context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106) (internal quotation marks omitted).

### B. Section 1983 Standard

In order to state a viable claim under Section 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., No. 3:CV-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

Moreover, in order for a Section 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009). Therefore, supervisors cannot be liable under Section 1983 under the traditional standard of respondeat superior. Santiago, 629 F.3d at 128. Instead, there are two theories of supervisory liability applicable to Section 1983 claims: (1) "a supervisor may be personally liable under [Section] 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under Section 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

C. **Eighth Amendment Standard**

As explained above, in order to plausibly plead a Section 1983 claim, Plaintiff must allege that the conduct complained of deprived him of a constitutional right. Here, Plaintiff avers that he suffered "unnecessary unwanton infliction of pain," due to a deliberate indifference to his serious medical need. (Doc. No. 18 ¶¶ 47, 55, 65, 67, 68, 79.). Consequently, the Court construes the second amended complaint as alleging a deliberate indifference claim under the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) plaintiff's objectively serious medical needs. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v.

7

Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The United States Court of Appeals for the Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Because only egregious acts or omissions may violate the above standard, mere medical malpractice, however, cannot result in an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."). If the parties dispute the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emps., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference. Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). The relevant question is, therefore, "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what the plaintiff wants." Jacobs v. Lisiak, Civ. No. 15-00686,

2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

The second prong of the applicable Eighth Amendment inquiry is whether the plaintiff's medical needs were sufficiently serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty., 834 F.2d at 347. Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. See id. For example, courts have indicated that minor abrasions, even those involving bleeding, do not rise to the level of objectively serious medical needs. See Wisneski v. Denning, Civ. No. 12-864, 2014 WL 1758118, at *22 (W.D. Pa. Apr. 30, 2014).

## III. DISCUSSION

Portions of Plaintiff's second amended complaint fail to meet the above-described pleading standards and, therefore, must be dismissed. In particular, Plaintiff has again named York County Prison in the caption of his amended complaint, despite the Court's previous dismissal of York County Prison as a defendant from this action with prejudice. (Doc. Nos. 14, 15.) Moreover, Plaintiff names as a Defendant, Prime Care, in the caption of the second amended complaint, but fails to identify what Prime Care is, or assert any specific allegations against it in the body of the second amended complaint. This style of pleading is patently inadequate in that it fails to allege facts that give rise to a plausible claim for relief. See Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case).

9

As to the substance of Plaintiff's Eighth Amendment claim, the Court notes that dental needs fall within the category of "serious medical needs" because dental care "is one of the most important needs of inmates." McCarthy v. Place, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980)). Courts have recognized the ability of prisoners to state a cognizable Eighth Amendment claim when they were denied oral hygiene supplies, specifically toothpaste. Board v. Farnham, 394 F.3d 469, 481 (7th Cir. 2005). In Board, the court found that certain prison officials were not entitled to qualified immunity when they denied prisoners toothpaste for a period of three and a half weeks and the prisoners alleged that they had requested toothpaste approximately fifteen times during this period. Id. at 481-82.

However, when a plaintiff fails to allege a deprivation of hygiene items resulting from deliberate indifference, courts have found that such claims do not adequately allege an Eighth Amendment violation. See Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003) (holding that a prisoner had failed to state an Eighth Amendment claim because he did not allege a complete denial of hygiene products or that the deprivation occurred out of indifference to his hygiene needs); Brown v. Brown, 46 F. App'x. 324, 325-26 (6th Cir. 2002) (holding that a prisoner who was merely inconvenienced because he was unable to purchase personal hygiene supplies for several months due to a hold on his prison account failed to state an Eighth Amendment claim).

The Court previously dismissed Plaintiff's amended complaint and granted him leave to amend, because at that time, it was not clear from Plaintiff's allegations whether he was in possession of, or provided with, a toothbrush and toothpaste during the period of March 23 through March 29, 2017. (Doc. No. 14.) Plaintiff's second amended complaint makes clear that he possessed a bristle finger toothbrush and maximum security gel toothpaste from March 23

through March 29, 2017, the dates on which Plaintiff claims he suffered an Eighth Amendment violation. (Doc. No. 18 ¶¶ 36, 47, 55, 65, 67, 68, 79.) Indeed, Plaintiff asserts that his Eighth Amendment claim is "only from dates March 23, 2017 [to] March 29, 2017" when he submitted sick calls and grievances. (Id. ¶¶ 37, 55, 56.)

The Court notes the following allegations made in Plaintiff's second amended complaint. Plaintiff claims that he was in BAU restriction from March 23 to March 29, 2017. (Id. ¶ 23.) Plaintiff further asserts that while he was in BHU restriction, that he began to suffer from oral pain because he was permitted only to use a "hard" bristle finger toothbrush and maximum security gel, rather than his soft bristle toothbrush and toothpaste that was confiscated during the six days Plaintiff was in BAU restriction. (Id. ¶¶ 4, 38, 39.) Additionally, Plaintiff claims he submitted sick calls to medical staff, but does not provide the dates on which he did so. (Id. ¶ 6.) Plaintiff further alleges that on March 29, 2017, he was seen by a dental assistant who examined him and instructed him to brush his teeth with a soft bristle toothbrush and use Sensodyne toothpaste. (Id. ¶¶ 8, 9.) It appears that Plaintiff was again seen by this dental assistant that same day so that she could take an x-ray of Plaintiff's mouth. (Id. ¶ 13.) Finally, it appears that on March 30, 2017, when Plaintiff was released from BAU restriction, his soft bristle toothbrush and toothpaste were returned to him. (Id. ¶¶ 37-40.)

Unlike the plaintiff in Board, who was denied toothpaste for a three-and-a-half week period, in this case Plaintiff possessed oral hygiene products – a bristle finger toothbrush and maximum security gel toothpaste during each of the six days he was in BAU restriction. (Id. ¶ 15.) It follows that at most, Plaintiff was unable to use his soft bristle toothbrush for six days. The Court notes that based on Plaintiff's own allegations, Plaintiff was able to resume using his soft bristle toothbrush and toothpaste a day after leaving the BAU, or on March 30, 2017. (Id. ¶¶

38, 39.) Consequently, Plaintiff has alleged neither a deprivation nor a level of deliberate indifference that rises to the level of an Eighth Amendment violation. See Harris v. Fleming, 839 F.2d 1232 (7th Cir. 1988) (holding that denial of toothbrush and toothpaste for ten days did not constitute cruel and unusual punishment); Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (holding that a delay in treating a toothache was not sufficiently serious to rise to a serious medical need), cert. denied, 488 U.S. 863 (1988); Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (stating that deprivation of "toiletries for approximately two weeks – while perhaps uncomfortable – does not pose such an obvious risk to an inmate's health or safety"); Bauer v. Sielaff, 372 F. Supp. 1104, 1110 (E.D. Pa. Mar. 4, 1974) (finding that plaintiff, who was housed in maximum security and deprived a toothbrush and toothpaste from seven to ten days, did not suffer a constitutional deprivation); Dobson v. Clymer, Civ. No. 95-1606, 1995 WL 553031, at *1 (E.D. Pa. Sept. 18, 1995) (finding that plaintiffs who alleged that they were deprived of toothpaste, soap, and other personal articles for two weeks failed to allege a claim of deliberate indifference or a deprivation of a minimal civilized measure of life's necessities); Moore v. Parham, No. 1:16-cv-1519, 2017 WL 4118458, at *5 (E.D. Va. Mar. 23, 2017) (finding that because the plaintiff's periodontitis – a gum infection – is not a serious medical need, he failed to state a deliberate indifference claim).

Accordingly, Plaintiff's second amended complaint will be dismissed for failure to state a claim upon which relief can be granted. Because the Court finds that any amendment would be futile, Plaintiff will not be permitted to file a third amended complaint. See Foman v. Davis, 371 U.S. 178, 182 (1962); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (providing that the futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's second amended complaint (Doc. No. 18), will be dismissed for failure to state a claim upon which relief may be granted and Plaintiff will not be afforded further leave to amend. An appropriate Order follows.